**Abbas SADEGHZADEH, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 16341.**

United States Court of Appeals
Seventh Circuit.

April 15, 1968.

Anna R. Lavin, Chicago, Ill., for petitioner.

Thomas A. Foran, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for respondent.

Before HASTINGS, Chief Judge, and KILEY, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Abbas Sadeghzadeh petitions for review of an order of a special inquiry officer of the Immigration and Naturalization Service, denying his request, pursuant to section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253 (h), to withhold his deportation to his native country, Iran.

The petitioner entered the United States as a non-immigrant visitor on March 19, 1952. Although he was authorized to stay in this country until March 18, 1953, he remained beyond that date. During the course of his deportation hearing held on February 5, 1957, the petitioner admitted that he was subject to deportation. Based upon this concession, an order of deportation was entered on that date. About two months later (April 25, 1957), the petitioner was convicted of murder in Cook County, Illinois and sentenced to fourteen years imprisonment. He was released on parole in August 1965 and discharged from parole in September 1966. On May 10, 1965, the deportation hearing was re-

opened to give the petitioner an opportunity to name the country to which his deportation should be directed. After a number of continuances were granted to allow the petitioner to obtain counsel, the reopened hearing was reconvened on October 29, 1965. At that time he applied under the provisions of section 243(h) for the withholding of his deportation to Iran. In his application, the petitioner alleged:

that this affiant was converted to Catholicity in 1952; that before and during his period of incarceration from 1956 to August 17, 1965, and presently he has attended Catholic services conscientiously;

\* \* \* \* \* \*

that the Moslem religion borders on the fanatic, to the extent that Moslems touching non-Moslem articles are considered contaminated; that abandonment of the Moslem religion by persons born to the Moslem religion will often result in lynching or danger to life in Moslem countries, and this is generally known by Moslems in predominantly Moslem countries;

\* \* \* \* \* \*

that, further Iran has, heretofore, attempted a hoax to get this affiant within the jurisdiction of Iran for some sort of unknown physical persecution; \* \* \*

On March 8, 1967, the special inquiry officer ordered the petitioner deported to England pursuant to his request or, in lieu thereof, to Iran. (The petitioner was advised on July 10, 1967 that England had refused to accept him.) He also denied the application for the withholding of deportation on the ground that the petitioner had failed to establish that he would be subject to persecution when he returned to Iran on account of either his conversion to Catholicism or his political opinions. The Board of Immigration Appeals concurred in the special inquiry officer's decision and dismissed the petitioner's appeal on June 20, 1967.

The questions raised by the petitioner are whether he established his claim of probable persecution because of his religious and political beliefs and whether there was any abuse of discretion in denying his request under section 243(h) to withhold his deportation.[1] We hold that the petitioner did not establish the likelihood of persecution and that there was no abuse of discretion in denying his application.

▮ The first ground advanced by the petitioner for claiming that he was entitled to relief under section 243(h) concerns an Iranian murder case in which he was allegedly involved. While the petitioner was incarcerated at the Illinois State Penitentiary for murder, he was served in 1963 with a "summons" transmitted through the Iranian Embassy to appear before a penal court in Iran within three months by his "legal lawyer" to answer for a murder which was supposed to have occurred in 1942. Included with the "summons" was a form which petitioner was requested to sign. He refused to do so and asked the warden to seek additional information about the charge. The warden made such an inquiry to the Iranian Embassy, but he received no response. The petitioner testified at the reopened hearing that he was not involved in any murder in Iran and that before leaving the country in 1952, he was subject to a police check which failed to disclose anything implicating him in such a crime.

Petitioner argues in this court that he "proved [before the special inquiry of-

---

1. Section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h) provides:

The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason.

This section was amended on October 3, 1965, after the petitioner executed his application for the withholding of his deportation. But the new provision was applied to the allegations set forth in his application.

ficer] the charge made by the Iranian Government is baseless and a pretext politically motivated and does amount to threatened persecution." The special inquiry officer properly rejected his "proof" as insufficient. At the hearing, the petitioner testified that he thought the Iranian murder charge "could be some sort of a trick," although he later testified "it could mean anything." He also testified that "one of the reasons" he did not wish to return to Iran was that he didn't want to face the shame of having been convicted in the United States of murder.[2] The petitioner introduced no evidence which in any way intimated what his political views were, let alone that he would be subject to persecution because of those views. Consequently, we conclude that the special inquiry officer did not abuse his discretion in finding that the petitioner failed to establish that he would be subject to persecution because of his political views if he returned to Iran.[3]

The second ground advanced by the petitioner for claiming that he was entitled to relief under section 243(h) concerns his conversion to Catholicism in the United States after leaving Iran. At the hearing, the petitioner testified that he "attended Catholic services occasionally even while I was in Iran." Yet he later testified of "rumors" of fanaticism toward and the lynching of converts from the Moslem religion. He also testified that this treatment of converts was a matter of common knowledge. When questioned as to how he knew that such persecution was common knowledge, the petitioner replied that when non-Moslems were served tea or coffee, their dishes were "put separate and [sic] hot boiling water to cleanse it [them]." On cross-examination, he testified that he personally knew of no persecution of Christians. Moreover, petitioner didn't think the Government of Iran persecuted non-Moslems.

An Iranian citizen, who had been living in the United States for seventeen years, was called by the petitioner to testify in support of his claim that he would suffer religious persecution if he returned to Iran. This witness testified that converts to Christianity suffer social and economic hardships. When asked if he had even seen non-Moslems subjected to physical harm, he replied, "There were some Jewish children going to school * * * and they were stoned." But he also testified that he didn't think the Iranian Government approved of the persecution of Christians.

We believe that the testimony offered by the petitioner failed to establish that he would be subject to religious persecution if he returned to Iran. It is not without significance that the petitioner apparently experienced no harassment or difficulty when he attended Catholic services prior to leaving Iran in 1952. Likewise, the testimony that religious persecution existed in Iran was based on "rumors" heard by the witnesses and not on any personal experience or observation. That the petitioner would be a member of a minority religious group if he returned to Iran is not sufficient to establish the likelihood of religious persecution. Lena v. Immigration and Naturalization Service, 379 F.2d 536 (7th Cir. 1967); Zupicich v. Esperdy, 319 F.2d 773 (2d Cir. 1963), cert. denied, 376 U.S. 933, 84 S.Ct. 703, 11 L. Ed.2d 652 (1964). Consequently, the special inquiry officer properly rejected this contention.

The petition for review is dismissed and the decision of the Board of Immigration Appeals is affirmed.

---

2. There was evidence in the record that the petitioner is a member of a prominent Iranian family.

3. We have previously held that "punishment for a non-political crime is not the kind of * * * persecution to which the statute permitting stays of deportation applies." Blagaic v. Flagg, 304 F.2d 623, 627 (7th Cir. 1962).